# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Patrick Finn,
as Receiver for First United Funding, Inc.,

Lighthouse Management Group, Inc.,
as Receiver for First United Funding, Inc.,
and

Corey N. Johnston,

        Plaintiffs,

v.

Jerry C. Moyes,
individually and as Trustee of The Jerry
and Vickie Moyes Family Trust,

Vickie L. Moyes,
individually and as Trustee of The Jerry
and Vickie Moyes Family Trust,

The Jerry and Vickie Moyes Family Trust,
and

 Moyes Children's Limited Partnership,

        Defendants.

Case No. 14-cv-1293 (MJD/TNL)

**REPORT &
RECOMMENDATION**

Gregory E. Karpenko, Joseph J. Cassioppi, and Ryan T. Murphy, Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402-1425 (for Plaintiffs); and

Adam A. Gillette, Lori A. Johnson, and Douglas L. Elsass, Fruth, Jamison & Elsass, PLLC, 80 South Eighth Street, Suite 3902, Minneapolis, MN 55402 (for Defendants).

# I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendants' Motion to Dismiss for Improper Venue or In the Alternative, to Transfer Venue (ECF No. 6). This motion has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable Michael J. Davis, Chief District Judge of the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b).

A hearing was held. Gregory K. Karpenko and Ryan T. Murphy appeared on behalf of Plaintiffs. Douglas L. Elsass and Lori A. Johnson appeared on behalf of Defendants.

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss for Improper Venue or In the Alternative, to Transfer Venue (ECF No. 6) be **DENIED**.

# II. BACKGROUND

Plaintiffs Patrick Finn and Lighthouse Management Group, Inc. ("Lighthouse"), are the court-appointed receivers for Plaintiff Corey N. Johnston's company, First United Funding, LLC ("First United") and Johnston's non-exempt assets. (Compl. ¶¶ 1, 2, 11, 12, ECF No. 1-1.) Finn and Lighthouse (collectively "Plaintiffs") were appointed following Johnston's guilty plea in connection with a Ponzi scheme that resulted in losses of over $100 million to its victims. (*Id.* ¶ 1.) Plaintiffs bring claims on behalf of victim banks allegedly defrauded by Johnston and First United.

### A. Ponzi Scheme & Defendants' Receipt of Funds

In brief, the Ponzi scheme involved the sale of "participation interests or assignments in loans made by First United.  First United loaned[,] or purported to loan[,] funds to borrowers in exchange for promissory notes and collateral . . . ."  (*Id.* ¶ 22.) "The promissory notes and related loan documents were between the borrower and First United.  First United then entered into agreements with banks . . . , whereby one or more [banks] purchased or acquired an interest in a purported promissory note between Frist United and the borrower."  (*Id.* ¶ 23.)  Many of the loans were purportedly secured by stock.  (*Id.* ¶ 31(a); *see id.* ¶ 106.)  In reality, however, Johnston and First United, among other things, oversold loans (selling participations that exceeded the amount actually loaned) and sold participations in counterfeit loans (no actual loan was made by First United to the purported borrower).  (*Id.* ¶¶ 31, 106.)  The funds obtained were then used, in part, to make other loans.  (*See id.* ¶¶ 31, 106.)  For their part, Johnston and First United misrepresented to the participating banks, i.e., those banks purchasing interests in the loans, that the purported loans were "properly collateralized by stock."  (*Id.* ¶ 6.)

Defendants Jerry C. Moyes, individually and as trustee of The Jerry and Vickie Moyes Family Trust; Vickie L. Moyes, individually and as trustee of The Jerry and Vickie Moyes Family Trust; The Jerry and Vickie Moyes Family Trust; and Moyes Children's Limited Partnership (collectively "Defendants")  "were First United's primary borrowers."  (*Id.* ¶ 3.)  Over 90% of the loans made by First United were to Defendants. (*Id.* ¶ 3.)  "At the time of [Plaintiffs'] appointment, over $70 million in loans to

3

[Defendants] and other entities in which they held an interest were in default . . . . [Plaintiffs] ha[ve] since collected approximately $62 million of these loans." (*Id.* ¶ 4.)

### B. Instant Litigation

In this action, Plaintiffs allege that "Defendants had actual knowledge of, and aided and abetted Johnston's Ponzi scheme, including Johnston's sale of participations in counterfeit and oversold loans." (*Id.* ¶ 5; *see also id.* ¶¶ 189-93.) Plaintiffs allege that Defendants actively participated in the over-pledging of their stock to obtain loans, including representing to the banks that the stock was "'free and clear of all liens and encumbrances,'" (*id.* ¶ 143), and a certain amount of stock existed in the purported collateral accounts, (*id.* ¶¶ 143-45). Plaintiffs allege that Defendants, among other things, "signed more than 100 fraudulent pledge documents involving First United, including third[-]party pledge agreements and security account control agreements." (*Id.* ¶ 147.) Plaintiffs allege that Defendants had actual knowledge that the representations made in the pledge agreements were false based on documents exchanged between Defendants and Johnston and First United showing the over-pledging of the stock. (*Id.* ¶¶ 148-49; *see id.* ¶¶ 152-56.) Plaintiffs allege that, without Defendants' false representations, Johnston and First United would not have been able to sell loans to the participant banks or make additional loans to Defendants. (*Id.* ¶ 150; *see id.* ¶ 151.) Plaintiffs further allege that Defendants threatened to expose the fraudulent conduct of Johnston and First United if additional funds were not provided to them. (*Id.* ¶¶ 179-87.)

Plaintiffs bring multiple claims against Defendants based on their alleged participation in the Ponzi scheme. First, Plaintiffs allege that Defendants aided and

abetted fraud and aided and abetted breach of the fiduciary duty owed by Johnston and First United to the participant banks.  (*Id.* ¶¶ 194-207.)  Second, alleging the transfers were fraudulent at the time they were made, Plaintiffs also seek to void several transfers made by First United to Defendants and recover the transferred funds.  (*Id.* ¶¶ 208-251.)  Third, Plaintiffs have asserted a claim for unjust enrichment.  (*Id.* ¶¶ 252-59.)

### III. VENUE MOTION

The present issue before this Court is where this action should be venued.  Resolution of this issue requires examining a number of factors, including the physical location of the parties, witnesses, and evidence as well as where the alleged events underlying this ligation occurred, the law to be applied, and the interests of justice.

Johnston and First United are Minnesota residents.  (*Id.* ¶¶ 10-11.)  First United was based in Lakeville, Minnesota.  (*Id.* ¶ 10.)  Johnston is also currently incarcerated in a federal prison camp in Duluth, Minnesota.  (*Id.* ¶ 1.)  Plaintiffs are also Minnesota residents.  (*Id.* ¶ 12.)  Defendants are all residents of Arizona.  (*Id.* ¶¶ 13-15.)

The banks on whose behalf Plaintiffs bring this action include both Minnesota and non-Minnesota residents.  There are three Minnesota banks, (*id.* ¶¶ 43, 64, 67), and a total of twelve banks from the states of North Dakota (two), Wisconsin (three), Kansas (two), Illinois (one), Arizona (one), Texas (two), and Iowa (one), (*id.* ¶¶ 40, 49, 46, 55, 58, 52, 61, 70, 73, 76, 82, 79).

### A. Proper Venue

Although Defendants' motion seeks transfer of venue in the alternative, Defendants spend the bulk of their briefing focusing on a district court's discretion to

transfer an action to another district.  (Defs.' Mem. in Supp. at 5-11, 15-16, ECF No. 8.)
Nevertheless, as this motion was brought under Fed. R. Civ. P. 12(b)(3), the Court first
considers whether the District of Minnesota is an improper venue.

Under Rule 12, a party may move to dismiss an action for "improper venue."  Fed.
R. Civ. P. 12(b)(3).  This action was initially brought in state district court in Dakota
County, Minnesota, and removed to this Court.  (Notice of Removal ¶ 1, ECF No. 1.)
"Title 28 U.S.C. § 1441(a) governs the venue of removed actions, and authorizes removal
to the district court for the district and division embracing the place where the state court
action is pending."  *St. Clair v. Spigarelli*, 348 Fed. App'x 190, 192 (8th Cir. 2009)
(citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953)); *see Toomey v.
Dahl*, No. 14-cv-3249 (JNE/TNL), ___ F. Supp. 3d ____, 2014 WL 5496617, at *2 (D.
Minn. Oct. 30, 2014) ("Supreme Court precedent and the body of law interpreting that
precedent clearly establish that section 1391 does not apply to actions removed to federal
court." (citing cases)); 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, &
Joan E. Steinman, *Federal Practice and Procedure* § 3732 (4th ed. 2009) (hereinafter
Wright & Miller) ("[T]he general venue statutes, Section 1391 through Section 1393, do
not apply to cases that have been initiated in a state court and removed to a federal
court.").  Section 1441(a) provides that a civil action may be removed from a state district
court "to the district court of the United States for the district and division embracing the
place where such action is pending."  28 U.S.C. § 1441(a).  This matter was removed
from state district court to federal district court in the District of Minnesota, wherein the
state matter was pending.  Therefore, venue is proper.  *St. Clair*, 348 Fed. App'x at 192.

*see Lyngholm v. FedEx Ground Package Sys., Inc.*, 827 F. Supp. 2d 912, 916 n.1 (S.D. Ia. 2011) ("[R]emoving parties . . . cannot raise an improper venue challenge."); Wright & Miller § 3732 ("It therefore is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there.").

"Even when venue is proper in the federal court, a removed action may be transferred to another federal district court in accordance with various federal transfer provisions . . . ." Wright & Miller § 3732. "Sections 1406 and 1404, which govern the transfer of venue, apply to actions removed to federal court." *Toomey*, 2014 WL 5496617, at *2; *accord St. Clair*, 348 Fed. App'x at 192 (noting change of venue is possible for removed actions, citing 28 U.S.C. § 1404(a)). Defendants have alternatively moved for a transfer of venue under 28 U.S.C. § 1404(a) and, therefore, the Court turns to whether a transfer of venue is appropriate.

## B. Transfer Venue

Defendants request that this matter be transferred to the United States District Court for the District of Arizona, asserting that "the complained of conduct occurred primarily in Arizona and the majority of the witnesses and the records in question are located in Arizona." (Defs.' Mem. in Supp. at 1.) Plaintiffs oppose transfer on several grounds, including (1) cases arising out of Ponzi schemes are properly venued in the district where the scheme originated and was carried out; (2) the convenience of the parties and witnesses favors the District of Minnesota; (3) the majority of relevant documents are located in Minnesota; (4) the claims arise out of conduct occurring

primarily in Minnesota; (4) the application of Minnesota law to the dispute; and (5) the interests of justice.  (Pls.' Opp'n at 17-38, ECF No. 17.)

### 1.  Evidence Considered

"[T]he party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted."  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).  Unlike a motion to dismiss, a request to transfer venue under § 1404(a) is not limited to a determination on the pleadings.  A court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents.  *See, e.g.*, *One on One Basketball, Inc. v. Global Payments Direct, Inc.*, Civ. Action No. 13-2020 (CKK), ___ F. Supp. 2d ____, 2014 WL 1617707, at *3 (D. D.C. Apr. 23, 2014) ("[W]hen evaluating motions to transfer under § 1404(a), a court should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents."); *Lyngholm*, 827 F. Supp. 2d at  921 (facts addressing materiality of witnesses' testimony and witnesses' accessibility with respect to forum to be provided "by way of affidavit or other information" (quotation omitted)); *Huang v. Napolitano*, 721 F. Supp. 2d 46, 47 n.2 (D. D.C. 2010) ("In reviewing a motion to transfer under 28 U.S.C. § 1404(a), a court may consider undisputed facts outside the pleadings.").  The parties have each submitted affidavits in support of their respective positions.  (*See generally* Aff. of J. Kevin Burdette, ECF No. 9; Decl. of Patrick Finn, ECF No. 18; Suppl. Aff. of J. Kevin Burdette, ECF No. 21.)  The Court has considered these documents in its analysis.

## 2.  Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under [§] 1404(a) typically bears the burden of proving that a transfer is warranted."  *Terra Int'l, Inc.*, 119 F.3d at 695.  "[A] transfer motion requires the court to consider the convenience of the parties, the convenience of the witnesses, the interests of justice, and any other relevant factors when comparing alternative venues."  *Id.* at 696; *see Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, No. 08-cv-5838 (MJD/JJG), 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (same).  The Eighth Circuit has "declined to offer an exhaustive list of specific factors to consider in making the transfer determination, but [has instructed] district courts [to] weight any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted."  *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (quotations and citation omitted); *accord Toomey*, 2014 WL 5496617, at *7 ("[C]ourts are not limited to these factors and can make a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." (quotation omitted)); *Cosmetic Warriors Ltd. v. Abrahamson*, No. 10-cv-938 (RHK/JSM), 723 F. Supp. 2d 1102, 1105 (D. Minn. 2010) ("A district court may also consider any other factors it finds relevant when deciding whether transfer is warranted.").  "There is no precise mathematical formula to be employed when balancing these factors, and a district court enjoys 'much discretion'

when deciding whether to grant a motion to transfer." *Cosmetic Warriors, Ltd.*, 723 F. Supp. 2d at 1105 (quoting *Terra Int'l, Inc.*, 119 F.3d at 697).

Moreover, "transfer motions should not be freely granted. A heavy burden rests with the movant to demonstrate why a case should be transferred. To satisfy that heavy burden, the movant must demonstrate that the relevant factors weigh strongly in its favor." *Id.* (quotations and citations omitted); *accord Toomey*, 2014 WL 5496617, at *7 ("The party seeking transfer must show that the balance of factors strongly favors the movant." (quotation omitted)). "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Terra Int'l, Inc.*, 119 F.3d at 696-97 (quotation omitted); *accord Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-cv-720 (RHK/JJG), 2009 WL 1684428, at *5 (D. Minn. June 16, 2009) ("Section 1404(a), however, provides for transfer to a *more* convenient forum, not one that is equally convenient (or inconvenient) to the forum originally selected."). "To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that [the] plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, No. 98-cv-2262 (DSD/JSM), 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).

### a. Convenience of the Parties

Defendants argue that "there are more Defendants" in Arizona, (Defs.' Mem. in Supp. at 7), and Plaintiffs are litigating other matters in Arizona, (Defs.' Reply at 5, ECF No. 20). In strict mathematic terms, there are three Minnesota plaintiffs and four Arizona defendants. The Court concludes that this factor is essentially neutral. "[S]uffice it to

say that the District of Minnesota—[Plaintiffs'] home forum—would be most convenient for [Plaintiffs], while the District of [Arizona]—Defendants' home forum—would be most convenient for Defendants." *Advanced Logistics Consulting*, 2009 WL 1684428, at *5.

### b. Location of Conduct at Issue

The Court next considers the location of, and parties' dispute concerning, the conduct at issue.  Defendants assert that, "[i]n connection with the loans, . . . Johnston traveled to Arizona to meet with [Defendants]" and "none of the Defendants ever traveled to Minnesota in connection with the loan transactions."  (Defs.' Mem. in Supp. at 8.)  Defendants assert that Plaintiffs "allege[] activities by Defendants that emanated from Arizona and the majority of the underlying transactions were negotiated, executed, and performed in Arizona."  (*Id.* at 9; *see id.* at 10; Defs.' Reply at 4.)  Defendants also note that, in the time leading up to the filing of the Complaint in this matter, Plaintiffs "spent a significant amount of time in Arizona," "had many in[-]person meetings in Arizona," and "countless communications with Defendants in Arizona" in connection with this litigation.  (*Id.* at 2-3.)

Plaintiffs' position is that Minnesota is the proper venue for this matter because the Ponzi scheme was operated out of Minnesota.  Plaintiffs contend that "Johnston originated and carried[]out his scheme in Lakeville, Minnesota.  He was convicted and sentenced in the District of Minnesota, and is imprisoned in Duluth, Minnesota.  The main receivership proceeding and the vast majority of related proceedings were, and continue to be, litigated [in state district court] in Dakota County . . . ."  (Pls.' Opp'n at

20.)  Additionally, Plaintiffs state that the claims "are based on Defendants' transactions with, and substantial assistance of, a Minnesota Ponzi Scheme."  (*Id.* at 31.)   In this regard, Plaintiffs state that the actions they had with Defendants in Arizona after the collapse of the Ponzi are "irrelevant."  (*Id.*)  Plaintiffs also point out that a "vast majority of the promissory notes" executed in connection with loans made by First United to Defendants contained a Minnesota forum-selection clause.  (*Id.* at 32.)  Lastly, Plaintiffs cite a number of interactions Defendants had with individuals and organizations in Minnesota, which Plaintiffs allege aided and abetted Johnston's Ponzi scheme.  (*Id.* at 32-33.)

The Court begins with the parties' arguments related to the forum-selection clause. "[A] valid and applicable forum selection clause . . . is 'a significant factor that figures centrally in the district court's calculus'" when analyzing a motion to transfer under § 1404(a)."  *Terra Int'l*, 119 F.3d at 691 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *accord Zayed v. Peregrine Fin. Grp., Inc.*, No. 12-cv-269 (MJD/FLN), 2012 WL 2373423, at *2 (D. Minn. June 22, 2012) ("A valid forum selection clause is a significant factor that should figure centrally in the district court's determination of whether transfer of venue is appropriate.").  Defendants contend that the forum-selection clause is inapplicable here because Plaintiffs are "assert[ing] claims on behalf of creditors of the Ponzi scheme, none of which relate to the interpretation of or enforcement of the loan agreements, which are not at issue in the Complaint."  (Defs.' Mem. in Supp. at 13; *see also id.* at 12-15; Defs.' Reply at 5.)  Defendants also contend that "[t]he loans have all been repaid, so there is nothing to enforce."  (*Id.* at 12.)

12

The Court agrees with Defendants that the forum-selection clause contained in any particular loan document "do[es] not govern the appropriate venue for this action." *Zayed*, 2012 WL 2373423, at *2. Plaintiffs are not seeking to enforce the terms of or obtain a remedy pursuant to any particular loan. Plaintiffs' claims arise out of common law (fraud, breach of fiduciary duty, unjust enrichment) and Minnesota's Uniform Fraudulent Transfer Act ("MUFTA"), Minn. Stat. §§ 513.41-.51.

In *Zayed*, a receiver brought an action under MUFTA in order to recover funds in connection with a Ponzi scheme. 2012 WL 2373423, at *1. The receiver alleged that the perpetrator of the Ponzi scheme engaged in transactions with the defendant futures commission merchant "with the intent to hinder, delay or defraud creditors of the [r]eceivership" and that such transfers were not received in good faith. *Id.* The defendant sought to have the matter transferred to the Northern District of Illinois, citing forum-selection and choice-of-law provisions in brokerage agreements executed by receivership entities and customer agreements executed by the Ponzi scheme's perpetrator. *Id.* The district court held that forum-selection and choice-of-law provisions did not apply because the receiver's claims did not arise out of the brokerage and customer agreements, but were "brought pursuant to MUFTA which provides relief to creditors that suffer damages due to certain fraudulent transfers." *Id.* at 2. "Because the [r]eceiver has the authority to assert MUFTA claims on behalf of the creditors of the Ponzi scheme, and because these claims do not arise from the [defendant's] broker and customer agreements, the forum selection clause and choice of provisions contained therein do not require transfer of this case to Illinois." *Id.*; *see also id.* ("Because this

case involves a Ponzi scheme, the Receivership Entities are considered victims of the fraud and thus creditors of the Ponzi scheme."). The same reasoning is applicable to the instant matter.

A number of other things, however, show a strong Minnesota connection and Minnesota's substantial interest in this litigation. First, the underlying Ponzi scheme originated and was carried out in Minnesota. *See Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*, Civ. Action No. 10-6457 (ES), 2011 WL 3329087, at *5 (D. N.J. Aug. 2, 2011) ("The scheme was perpetrated by a Florida lawyer through his Florida[-]based law firm. The alleged wrong committed by TD Bank supposedly occurred in a Florida branch involving employees within that branch. It is clear that Florida has a substantially greater interest in the disposition of this case than New Jersey."); *Ritchie Capital Management v. Jeffries*, No. 09-cv-07228, 2010 WL 768877, at *3 (N.D. Ill. Mar. 4, 2010) (fact that matter was related to "one of the 'largest investment frauds in the history of Minnesota'" and other litigation "involving some of the same set of facts and circumstances that gave rise to this Complaint" was pending in Minnesota presented "a strong connection to Minnesota, and . . . weigh[ed] heavily in favor of transfer" to Minnesota). Some of the victim banks are Minnesota banks. Second, Johnston was convicted and sentenced in this District, and is currently imprisoned in this District. *United States v. Johnston*, No. 10-cr-2221; Federal Bureau of Prisons, *available at* http://www.bop.gov/inmateloc/; *see Zayed*, 2012 WL 2373423, at *3 (fact that court had presided over criminal trial of several defendants involved in Ponzi scheme weighed against transfer). Johnston is likely a key witness in this case, which weighs against

14

transferring this matter to Arizona. *See Terry v. Walker*, 369 F. Supp. 2d 818, 823 (W.D. Va. 2005) (potentially key witness's location of incarceration in district weighed against transfer). Third, Plaintiffs were appointed by a Minnesota state court and the main receivership proceeding as well as "the vast majority of related proceedings were, and continue to be, litigated in [state district court in] Dakota County," Minnesota. (Pls.' Mem. in Opp'n at 20; Finn Decl. ¶¶ 1, 18.) *See Zayed*, 2012 WL 2373423, at *3 (fact that court presided over "SEC and CFTC actions concerning . . . Ponzi scheme, as well as a number of related actions" and receiver "is involved in a number of similar proceedings in this District" weighed against transfer); *see also Ritchie*, 2010 WL 768877, at *3 (related litigation pending in Minnesota weighed in favor of transferring to Minnesota); *Terry*, 369 F. Supp. 2d at 823 (fact that court presided over main action leading to appointment of receiver, appointed receiver, and receiver had filed 22 actions with court for purposes of recovering receivership assets weighed against transfer). While Defendants may have physically signed documents related to this proceeding in Arizona and are currently located in Arizona, the Court agrees with Plaintiffs that "the District of Arizona has little connection to the Ponzi scheme" that Defendants are alleged to have aided and abetted and benefitted from. Therefore, this weighs against transfer.

### c. Convenience of the Witnesses

"The convenience-of-witnesses factor generally is regarded as the most important in the inquiry. In analyzing this factor, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Klatte v. Buckman, Buckman & Reid, Inc.*, No. 13-cv-

3109 (RHK/SER), 995 F. Supp. 2d 951, 955 (D. Minn. 2014) (citation and quotation omitted).  "In analyzing the convenience-of-witnesses factor, the Court must focus on non-party witnesses, since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1106 (quotations omitted).  "When assessing the convenience of the witnesses, the Court considers the number of essential non-party witnesses, those witnesses' locations, and the Court's preference for live testimony over depositions."  *Travel Tags, Inc. v. UV Color, Inc.*, No. 09-cv-1619 (JRT/AJB), 690 F. Supp. 2d 785, 792 (D. Minn. 2010).

With respect to this factor, "Defendants have identified [14[1]] witnesses who live in Arizona . . ." and assert that "many of [them] would be unwilling to travel to Minnesota and . . . are outside the subpoena power of this Court."  (Defs.' Mem. in Supp. at 8; *see* Burdette Aff. ¶ 16; Defs.' Reply at 6; Suppl. Burdette Aff. ¶ 2.)  But, as Plaintiffs point out, "other than providing the name and titles of these witnesses, Defendants provide almost no information regarding the witnesses, their proposed testimony, or its importance to their defenses."  (Pls.' Opp'n at 24.)  The descriptions provided by Defendants are indeed sparse.  Defendants identify only the particular individuals and their connection to Defendants, which, at best, allows one to speculate what a particular individual's relevant testimony might be.  (*See* Burdette Aff. ¶ 16.)

---

[1] The number of witnesses identified by Defendants is at least 15.  Defendants identify themselves, J. Kevin Burdette, and 12 other individuals (three of which are from the same Arizona law firm) as well as "other members" of the law firm.  (Burdette Aff. ¶ 16.)

"This factor is not a contest between the parties as to which one presents a longer list of witnesses located in the potential districts.  The party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Great Clips, Inc. v. Ross*, No. 12-cv-1886 (JNE/TNL), 2013 WL 358894, at *5 (D. Minn. Jan. 30, 2013) (citing *Graff v. Quest Commc'ns Corp.*, No. 98-cv-2592 (DWF/AJB), 33 F. Supp. 2d 1117, 1121-22 (D. Minn. 1999)).  "[I]n attempting to show that the convenience of the witnesses would be better served in a particular form, generalized allegations, that are bereft of any description of what those witnesses' testimony will be, are insufficient." *Oldenburg v. Gulf Street Coach, Inc.*, No. 06-cv-3520 (JNE/RLE), 2007 WL 1425487, at *7 (D. Minn. May 11, 2007) (citing cases).  The Court is tasked with "examin[ing] the materiality and importance of the anticipated witnesses' testimony and . . . determin[ing] their accessibility and convenience to the forum." *Klatte*, 995 F. Supp. 2d at 955 (quotation omitted). Defendants have provided little to no basis for this Court to do so.

Moreover, upon closer examination, several of these witnesses are likely under Defendants' control.  Defendants have listed at least two current employees—J. Kevin Burdette and Ellen Penrod—and several of their current and former attorneys—Ronald C. Cohen, Laura Kennedy, and Cindy Crogan of Cohen, Kennedy, Dowd & Quigley, P.C.; Earl H. Scudder, Jr.; and Gerald F. Ehrlich of Lane & Ehrlich, Ltd.  (Burdette Aff. ¶¶ 16(b), (d), (e), (f).) *See Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1106.

In contrast, Plaintiffs have identified and provided information regarding the anticipated testimony of a substantial number of witnesses located here in Minnesota.

These include Johnston, who is incarcerated here in Minnesota, and his wife, who also resides in Minnesota.  (Finn Decl. ¶¶ 9, 17.)  As already stated, Johnston perpetrated the Ponzi scheme which Defendants are alleged to have aided and abetted.[2]  Plaintiffs "anticipate[] calling Johnston's wife as a witness to explain the circumstances under which she received at least $20,000 from [Defendants] *after* Johnston pleaded guilty." (Pls.' Opp'n at 26.)  Plaintiffs also anticipates calling "special agents from the Minnesota offices of the FBI and the Department of the Treasury[, who] will provide testimony and other evidence regarding their investigation of Johnston and First United, including related to documents and electronic records seized from First United's office in Johnston's home in Lakeville, Minnesota."  (*Id.*)  Plaintiffs have also identified Lance Morque and Peter Ryan, who both reside in Minnesota.  (Pls.' Opp'n at 26-27; Finn Decl. ¶¶ 15, 16.)  Both Morque and Ryan were involved with Defendants' securities accounts and worked in the Minnesota offices of the entities maintaining those accounts.  (Finn Decl. ¶¶ 15, 16.)  Morque and Ryan are alleged to have facilitated the over-pledging of Defendants' stock.  (*Id.* ¶¶ 15, 16.)  Plaintiffs assert that Morque and Ryan "are likely to have significant information related to both the Ponzi scheme and Defendants' connection to the scheme."  (Pls.' Opp'n at 26.)

Plaintiffs have also identified a number of entities and their Minnesota-based representatives.  These include Dougherty Funding, LLC and its general counsel, Thomas Abood, and Wells Fargo Advisors, LLC (f/k/a Wachovia Securities, LLC), and its

---

[2] Johnston is scheduled to be released in August 2015. (Pls.' Opp'n at 26.) *See* Federal Bureau of Prisons, *available at* http://www.bop.gov/inmateloc/.  If Johnston's release occurs prior to trial, it is presumed that he will "reside with his wife in Lakeville, Minnesota."  (Pls.' Opp'n at 26.)

corporate representative, Wilma Quinn, as well as the three Minnesota victim banks, Border State Bank, Maple Bank, and Minnwest Bank Luverne.  (Pls.' Opp'n at 26, 29.) Dougherty Funding, LLC discovered that Johnston and Defendants had diverted loan proceeds into another account and confronted Defendants about the account.  (Pls.' Opp'n at 8.)  Defendants purportedly moved their stock to Wells Fargo Advisors, LLC, where it was managed by Ryan, after their over-pledging was discovered at another securities firm.  (Pls.' Opp'n at 12.)   Quinn worked with Ryan and "will provide testimony and records regarding Defendants' over-pledging of securities accounts" and Ryan's activities.  (Finn Decl. ¶ 21.)

In addition, Plaintiffs have identified several financial institutions.  Bank accounts related to the Ponzi scheme were maintained at Wells Fargo Bank, N.A., U.S. Bank, N.A., American Bank of St. Paul, and Voyager Bank.  (Pls.' Opp'n at 27-28.)  While some of these banks are based in Minnesota, it is not clear who the banks' representatives will be and where those representatives are located.[3]   (*See* Pls.' Opp'n at 27-28.) Plaintiffs anticipate that these banks will produce records and testimony related to the accounts, including transactions involving Defendants.  (*Id.* at 27-28.)   Additionally, Plaintiffs have identified banks who purchased participations, which include at least 11 additional banks in Minnesota.[4]   (*Id.* at 28-29.)  Plaintiff states that representatives of these banks "will provide records and testimony related to transactions with First United,

---

[3] Stated differently, it is not clear whether the bank will select a representative from one of its Minnesota branches or if the representative is employed by the bank in some in other capacity and located outside Minnesota.

[4] The Court has accounted for duplication in some of the categories, including banks at which accounts where maintained in connection with the Ponzi scheme, banks which purchased participations, and banks which are considered to be "victim" banks.

reliance on account control agreements and other collateral provided by Defendants, and in certain instances direct communications . . . [with] Defendants or their representatives." (Pls.' Opp'n at 29.) Plaintiffs assert that "[t]he majority of [other banks who purchased participations] are located in the upper-Midwest, including Wisconsin, North Dakota, South Dakota, Iowa, and Illinois." (*Id.*) Again, it is not clear who the banks' representatives will be and where those representatives are located. Lastly, Plaintiff has identified Oppenheimer & Co., Inc., and Solomon Smith Barney, both of whom are located in New York and "have information related to Defendants' over-pledging of securities accounts." (*Id.* 28 n.5.) Recognizing that a large portion of these financial institutions are located in Minnesota and the upper-Midwest, the financial institutions have played a secondary role in the Court's analysis based on the summary information provided by Plaintiffs regarding the actual individuals testifying on the institution's behalf and the fact that several financial institutions would be equally inconvenienced by travel, whether to Minnesota or Arizona.

On balance, given the significant number of material witnesses located in Minnesota, the Court concludes that this factor weighs heavily against transfer.

### d.  Accessibility of Records and Documents

Defendants state that "extensive records of the investments and dealings with Johnston and First United are located in Arizona," citing a subpoena served by Plaintiffs which "resulted in the production of tens of thousands of pages." (Defs.' Mem. in Supp. at 8; *see also* Defs.' Reply at 9.) Conversely, Plaintiffs assert that "tens[]of[]thousands of pages of documents, as well as computer hard drives and other records, seized from First

United by [Plaintiffs] and the FBI" are maintained here in Minnesota.  (Pls.' Opp'n at 30.)  Plaintiffs also identify the financial institutions previously discussed as document custodians.  (*Id.*)

The Court finds that this factor is largely neutral.  *See Oldenburg*, 2007 WL 1425487, at *7 (factor neutral where each party's documents were located primarily in its home state).  Moreover, a substantial portion of the documentary evidence in this matter is likely to consist of "bank records, whose accessibility is unlikely to be affected by the choice of venue."  *Terry*, 369 F. Supp. 2d at 823.  Moreover, "the fact that records are located in a particular district is not itself sufficient to support a motion for transfer. . . . [G]iven today's technological advancements, the ability to transfer electronic documents is generally not difficult or burdensome."  *Benson v. JPMorgan Chase Bank, N.A.*, Nos. C-09-5272 EMC, C-09-5560 EMC, 2010 WL 1445532, at *6 (N.D. Cal. Apr. 7, 2010) (quotations and citation omitted).

### e.  Interests of Justice

When considering the interests of justice, courts take into account:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law.

*Klatte*, 995 F. Supp. 2d at 957 (citing *Cosmetic Warriors Ltd.*, 723 F. Supp. 2d at 1107). The parties have essentially agreed that the obstacles-to-a-fair-trial and conflicts-of-law facts are neutral and therefore the Court focuses on the remaining factors.  (Defs.' Opp'n at 10 n.3; Pls.' Opp'n at 36.)

21

### i.  Judicial Economy

The Court concludes that this factor is essentially neutral.  Defendants are correct that "[o]ther than considering the present motion, the Court has not yet invested resources in this case."  (Defs.' Mem. in Supp. at 10.)  *See Vogel v. E.D. Bullard Co.*, No. 11-cv-2563 (MJD/AJB), 2012 WL 38825, at *4 (D. Minn. Jan. 9, 2012) (fact that court had not yet invested resources in case, transfer would not entail duplication, and transferee court's "far less congested docket[]" weighed "slightly" in favor of transfer).  Plaintiffs, however, note that "the District of Arizona has a higher caseload by weighted filings and a significantly longer time from filing to trial for civil actions than this District . . . , which weighs against transfer."  (Pls.' Opp'n at 36.)

### ii.  Plaintiffs' Choice of Forum

Defendants assert that Plaintiffs' choice of forum should be given less deference "because the underlying events giving rise to the litigation did not occur in the forum."  (Defs.' Mem. in Supp. at 10.)  Plaintiffs contend that their forum selection is not only entitled to deference, but "entitled to even greater weight than that of a normal plaintiff" given Plaintiffs' receivership appointment.  (Pls.' Opp'n at 35.)

"In general, federal courts give considerable deference to a plaintiff's choice of forum . . . ."  *Terra Int'l*, 119 F.3d at 695.  Plaintiffs are also Minnesota residents.  *See Vogel*, 2012 WL 38825, at *4 ("This factor weighs slightly against transfer because Plaintiff is a Minnesota resident and chose Minnesota as his forum."); *cf. Caddy Products Inc. v. Am. Seating Co.*, No. 05-cv-500 (RHK/AJB), 2005 WL 2401910, at *3 (D. Minn. Sept. 28, 2055) ("[C]ourts afford plaintiff's choice of forum significantly less deference

when the plaintiff is not a resident of the selected forum."). And, as discussed in Section III(B)(2)(b), the District of Arizona has little connection to the Ponzi scheme that Defendants allegedly aided and abetted, which occurred here in Minnesota. *Cf. Vogel*, 2012 WL 38825, at *4 ("However, a plaintiff's choice of forum is afforded 'significantly less deference' when the underlying events giving rise to the litigation did not occur in the forum." (quoting *Nelson*, 58 F. Supp. 2d at 1026)).

As for Plaintiffs' contention that a receiver's choice of forum is entitled to even greater deference, the case cited by Plaintiffs, *Wing v. Apex Holding Co., LLC*, No. 2:09-CV-00022, 2009 WL 2843343 (D. Utah Aug. 27, 2009), is inapposite. *Wing*, and the cases cited therein, discuss a situation in which a defendant is trying to transfer a matter out of the federal district court *which appointed the receiver* to another district court. 2009 WL 2843343, at *9. Plaintiffs were not appointed by this Court.

In any event, the Court concludes that this factor weighs against transfer given the general deference to a plaintiff's choice of forum.

### iii. Comparative Costs of Litigation

According to Defendants, this factor weighs in favor of transfer "given the extra effort Defendants will be forced to make to secure the testimony of their Arizona-based witnesses." (Defs.' Mem. in Supp. at 10.) Plaintiffs point out that they will "have comparable additional costs if . . . forced to transport [their] own employees and agents to trial in the District of Arizona." (Pls.' Opp'n at 35.) Additionally, Plaintiffs note that, given their receivership status, "[a]ny additional expenses incurred by . . . litigating this

case in Arizona would only result in less money available to reduce the victims' losses." (*Id.* at 36.)

"Both parties in this case will incur expense to litigate this case in any venue." *Caddy Prods.*, 2005 WL 2401910, at *4.  "[S]ection 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient, and transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer."  *Graff*, 33 F. Supp. 2d at 11221.  Given that a party will be inconvenienced in either forum and taking into account Plaintiffs' receivership role, the Court concludes that this factor weighs against transfer.  *See Vogel*, 2012 WL 38825, at *3 ("When the potential inconvenience to the parties is comparable, the tie is awarded to the Plaintiff." (quotation omitted)).

### iv. Ability to Enforce a Judgment

Defendants state that this factor weighs "slightly" in favor of transfer "because Defendants are residents of and have business interests in Arizona."  (Defs.' Mem. in Supp. at 10.)  Plaintiffs do not really appear to contest this point.  (*See* Pls.' Opp'n at 36.) Citing 28 U.S.C. § 1963, however, Plaintiffs assert that they "will be able to enforce a judgment issued from this Court wherever Defendants own property" and note that they previously enforced a "judgment entered in Minnesota against Defendants by garnishing assets held at a financial institution in Minnesota."  (Pls.' Opp'n at 36; *see also* Finn Decl. ¶ 19.)

"A judgment for recovery of money or property entered into in one district court may be registered in any other district."  *Toomey*, 2014 WL 5496617, at *9 (citing 28

U.S.C. § 1963).   "If judgment were entered in favor of Plaintiff[s] in the District of Minnesota, judgment may have to be registered in districts where Defendant[s] owned property."   *Id.*   Accordingly, should Plaintiffs prevail, any Minnesota judgment may have to be registered in Arizona.   But, as Plaintiffs point out, they have previously been able to enforce a judgment entered against Defendants by a Minnesota court here in Minnesota. The Court finds that this factor is neutral.

### v.  Local Court Determines Local Law

Defendants state that this factor is neutral as "there are no apparent conflicts or local law issues that weigh one way or another."   (Defs.' Mem. in Supp. at 10 n.3.) Plaintiffs respond that they have "asserted Minnesota common-law claims for aiding and abetting fraud and breach of fiduciary duty, and unjust enrichment" as well as statutory claims under Minnesota law.   (Pls.' Opp'n at 33.)   Plaintiffs also note that Minnesota has been "at the center" of several recent Ponzi schemes, which has led to the "develop[ment of] considerable expertise in adjudicating claims arising out of Ponzi schemes—including the aiding[-]and[-]abetting and fraudulent[-]transfer claims [Plaintiffs] ha[ve] asserted against the Defendants."   (Pls.' Opp'n at 37.)   The Court finds that this factor is somewhat favorable to Plaintiffs, even though "federal courts often are called upon to apply the law of other states." *Advanced Logistics Consulting*, 2009 WL 1684428, at *6; *accord Clergy Fin.*, 598 F. Supp. 2d at 995 ("[C]ourts can just as easily apply the law of another state as easily as their own." (quotation omitted)).

In light of the foregoing, the Court concludes that Defendants have not shown that the relevant factors strongly weigh in favor of transferring this matter to the District of Minnesota and therefore recommends that Defendants' motion be denied in its entirety.

## IV. RECOMMENDATION

Based upon the file, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss for Improper Venue or In the Alternative, to Transfer Venue (ECF No. 6) be **DENIED**.


Dated: January ____20____, 2015                    _____*s/ Tony N. Leung*_____
                                                   Tony N. Leung
                                                   United States Magistrate Judge
                                                   for the District of Minnesota


                                                   *Finn et al. v. Moyes et al.*
                                                   Case No. 14-cv-1293 (MJD/TNL)


## <u>NOTICE</u>

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 4, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Eighth Circuit Court of Appeals.